IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

JUN - 9 2016

CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATED OF AMERICA,

v.                                    **CRIMINAL ACTION NO. 4:16cr14**

RISHAD ADKINSON,

Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Rishad Adkinson's Motion to Suppress. ECF No. 22. The

Court held a hearing on this matter on May 31, 2016. This Memorandum Opinion and Order

expiates the Courts' ruling from the bench. Defendant contends that the officers conducted an

unlawful search of his person during a traffic stop, while the Government asserts that the search

was lawful because they had a reasonable suspicion Defendant was armed. Having reviewed the

pleadings and held a hearing on the Motion to Suppress, this matter is now ripe for judicial

determination. For the reasons stated on the record and discussed below, Defendant's Motion to

Suppress is **GRANTED**.

### I. PROCEDURAL AND FACTUAL HISTORY

On February 8, 2016, a Grand Jury returned a two count Indictment charging Defendant

with Possession of a Firearm by a Convicted Felon (Count 2) in violation of 18 U.S.C. §§

922(g)(1) and 924(a)(2). The Indictment alleges that on or about November 26, 2015,

Defendant, a convicted felon, knowingly and unlawfully possessed a Taurus .40 caliber semi-

automatic pistol and ten rounds of Tulammo .40 caliber ammunition. The Indictment also

includes an allegation of asset forfeiture, 18 U.S.C. §§ 924(d)(1) and 2461(c). On April 4, 2016,

1

Defendant waived arraignment and entered a plea of not guilty. A jury trial for this matter is scheduled for June 7, 2016 at 10:00 a.m.

The instant Motion to Suppress stems from a police search of Defendant's person during a traffic stop on November 26, 2015 in Newport News, VA. Co-Defendant Nathanial McElrath, III was driving the vehicle at approximately 8:40 p.m. when officers stopped the vehicle for driving with the headlights off while it was dark outside. The officers obtained both Defendants' identification and after running their information, learned that McElrath had an outstanding warrant.

A brief struggle ensued between the arresting officers and McElrath, and he was ultimately arrested. Defendant was instructed to remain in the car while McElrath was arrested and the officers called for backup. Officer Angsten alleges while he was arresting McElrath he turned and saw Defendant move his hands towards his waistband, so he instructed Defendant to place his hands on the dashboard. Officer Amarillo then began watching Defendant. Defendant contends he never moved his hands towards his waistband. Defendant admits that at one point he moved his hands towards the ceiling because his arms were tired, but he placed them back on the dashboard in compliance with officer Amarillo's instruction to keep his hands on the dashboard where he could see them.

After McElrath was arrested, officers Amarillo and LaRoche instructed Defendant to exit the vehicle. Officer LaRoche attempted to conduct a pat down of Defendant. A struggle ensued between Defendant and the officers and officer Walzak deployed his Taser, causing Defendant to fall to the ground. At this time the officers discovered a firearm and ammunition on Defendant's waist. They seized the firearm and arrested Defendant after determining he had a prior felony conviction. Due to the angles and struggle that ensued, the officers' body cameras did not

2

capture the entire incident.

Defendant now moves pursuant to Rule 12(b)(3)(c) of the Federal Rules of Criminal Procedure and the Fourth Amendment of the United States Constitution to suppress at trial "all evidence obtained as a result of an unlawful search and seizure of Mr. Adkinson in Newport News, VA on or about November 26, 2015." Defendant's Motion, along with a Memorandum of Law, was filed on April 25, 2016. On April 30, 2016, Defendant filed a letter indicating that a rehearing en banc was granted on April 25, 2016, thereby vacating the panel opinion in *United States v. Robinson*, 814 F.3d 201 (4th Cir. 2016), cited in the Motion to Suppress. However, defense counsel indicates the arguments in the motion are still supported. The Government filed a response on May 6, 2016. Defendant filed a reply on May 9, 2016.

## II. LEGAL STANDARDS

In deciding a motion to suppress, the district court is empowered to make findings of fact, and conclusions of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452-53 (10th Cir. 1993); *see also United States v. Massey*, 257 F. App'x 662, 664 (4th Cir. 2007); *Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995). As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561(4th Cir. 1981). Once the defendant establishes a basis for his suppression motion, the burden shifts to the government. *United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974).

3

## III. DISCUSSION

Defendant seeks to suppress all evidence obtained from the November 26, 2015 warrantless search because he contends there was no reasonable articulable suspicion that he was armed and dangerous to permit a pat down pursuant to *Terry*. Defendant argues that he should not have been detained after his co-Defendant was arrested because the traffic stop ended at that point. He asserts that even if the seizure during the traffic stop was lawful, the pat down was not because officers must have a particularized and objective basis for a reasonable articulable suspicion that a suspect is armed and dangerous to conduct a pat down. Defendant argues that there was no basis for the officers' suspicion because he never reached towards his waistband, and nevertheless, a reasonable suspicion that he was armed does not mean he is dangerous.

Defendant asserts that the officers' body cameras depict his hands on the dashboard at all times except when he moved his hands once towards the ceiling, and no evidence depicts him moving towards his waistline. Defendant notes that the police reports do not mention that the co-Defendants were "wide eyed" prior to being pulled over, and this fact is minimally probative to support a reasonable suspicion. Defendant also argues that the neighborhood characteristics did not contribute to a reasonable suspicion because he was not engaging in suspicious behavior. Defendant points out that the officer looks away from him several times after allegedly seeing him reach towards his waistband, and the officers had no reason to know Defendant had a prior felony conviction because the felony check was performed after he was arrested. Further, Defendant argues even if he did not have a valid license, he could have walked away from the scene, so there was no reason to detain him after McElrath's arrest. Defendant also notes that the officers recovered a firearm from Mr. McElrath's coat after Defendant was arrested, so this fact did not contribute to the officers' alleged reasonable suspicion.

4

The Government responds that the search was proper because the officers lawfully detained Defendant pursuant to a lawful traffic stop and had a reasonable suspicion to conduct an investigative *Terry* pat down. The Government argues that the traffic stop did not end with McElrath's arrest because Defendant did not have a valid license and no one was present to operate the car. Further, the Government asserts that the officers had a reasonable suspicion that the Defendant was armed and dangerous based on the totality of the circumstances that the occupants of car looked "wide eyed" at police before being stopped, neither had a valid license, McElrath had an open warrant, a struggle ensued between the officers and McElrath, and an officer allegedly saw Defendant move his hands near his waistband. Furthermore, the Government asserts that the officers are also allowed to consider their experience that suspects normally carry weapons in their waistband and that the traffic stop was conducted in a high crime area known to the officers for narcotics and gang activity in determining there was a reasonable suspicion to warrant a pat down. The Government contends that "reasonable suspicion that a person is armed is enough to justify a 'pat down' as that person poses a danger to the officer."

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. Amend. IV. A "'search' occurs when a reasonable expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also Katz v. United States*, 389 U.S. 347, 361 (1967) (J. Harlan concurring). A search that is conducted without a warrant is per se unreasonable unless a valid exception to the warrant requirement applies. *Katz*, 389 U.S. at 357. The United States bears the burden of establishing by a preponderance of the evidence admissibility of evidence obtained as the result of a warrantless search or seizure. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

5

A traffic stop constitutes a seizure under the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996); *see also United States v. Arvizu,* 534 U.S. 266, 273 (2002) ("[The Fourth Amendment's] protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."). "Because a traffic stop is more analogous to an investigative detention than a custodial arrest, we treat a traffic stop, whether based on probable cause or reasonable suspicion, under the standard set forth in *Terry v. Ohio,* 392 U.S. 1 (1968)." *United States v. Digiovanni,* 650 F.3d 498, 506 (4th Cir. 2011), *as amended* (Aug. 2, 2011) (citing *Berkemer v. McCarty,* 468 U.S. 420, 439 (1984)).

Pursuant to *Terry,* the Court must analyze 1) whether the police officer's action was justified at its inception, and 2) whether the police officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *United States v. Rusher,* 966 F.2d 868, 875 (4th Cir. 1992). The first condition is met during a traffic stop "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *Arizona v. Johnson,* 555 U.S. 323, 327 (2009). Under *Terry*'s second prong, the seizure must be limited both in scope and duration. *Florida v. Royer,* 460 U.S. 491, 500 (1983) (plurality opinion).

With respect to the scope of a traffic stop, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Sharpe,* 470 U.S. at 686. In determining whether a traffic stop is too long in duration, the court assesses whether officers acted reasonably based on the totality of the circumstances to "diligently pursue the investigation of the justification for the stop (usually a traffic infraction)." *Digiovanni,* 650 F.3d at 498 (citing *United States v. Sharpe,* 470 U.S. 675, 686 (1985)); *see also Illinois v. Caballes,* 543 U.S. 405, 407 (2005) (noting that a traffic stop

6

may become "unlawful if it is prolonged beyond the time reasonably required to complete [its] mission"); *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) ("If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle."). To prolong a traffic stop and investigate a matter outside the scope of the initial stop, the officer must possess reasonable suspicion or obtain the driver's consent. *Digiovanni*, 650 F.3d at 507.

Further, "[t]o justify a pat down of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). An officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Branch*, 537 F.3d at 336 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968); *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000)) (internal quotations omitted). The Fourth Circuit has found that "a generalized risk to officer safety" does not "justify a routine 'pat-down' of all passengers as a matter of course." *United States v. Sakyi*, 160 F.3d 164, 168-69 (4th Cir. 1998). The court further held, "Because a frisk or 'pat down' is substantially more intrusive than an order to exit a vehicle or to open its doors, we conclude that an officer must have justification for a frisk or a 'pat-down' beyond the mere justification for the traffic stop." *Id.*

Upon a finding that the alleged facts occurred, the Court must determine whether the facts viewed in the totality of the circumstances give rise to a reasonable suspicion that Defendant was in possession of a weapon and posed a danger. *See United States v. Brugal*, 209 F.3d 353, 359 (4th Cir. 2000) ("The reasonable suspicion determination does not depend upon

any one factor, but on the totality of the circumstances") (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)); *see also United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1996) (holding that "an area's disposition toward criminal activity is an articulable fact that may be considered along with more particularized factors to support a reasonable suspicion").

 The traffic stop was a lawful investigative stop because of the traffic infraction of driving with the headlights off in the dark, which Defendant does not contest, thereby satisfying the first *Terry* condition. The officers also lawfully arrested the driver pursuant to an open warrant. The issue is whether the officers lawfully attempted to conduct a pat down of Defendant who was a passenger in the vehicle during the traffic stop. The Court must consider the totality of the circumstances in determining whether the officers in fact had a reasonable suspicion Defendant was armed and dangerous to warrant a pat down. The relevant circumstances here include the fact that neither occupant had a valid license to operate the car, the driver struggled with the officers as he was being arrested for an outstanding warrant, an officer allegedly saw Defendant move his hands near his waistband, and the incident occurred in a known high crime area.

 The Court finds no credible evidence that the officers had a reasonable suspicion Defendant was armed and dangerous. The Government presented evidence through three of the officers' testimonies and body camera videos. However, there were numerous conflicts in the evidence. Officer Angsten testified he only saw Defendant move towards his waistband once, although in one of his reports he indicated under penalty of perjury that he saw Defendant move towards his waistband several times. Officer Angsten is the only officer that alleges he saw Defendant reach towards his waistband. The other officers testified that they did not see Defendant reach towards his waistband, and he was compliant after being instructed to place his hands on the dashboard. Officer Angsten also did not indicate in his reports as required that his

body camera was disconnected during the traffic stop.  Additionally, the police reports do not mention that the Defendants appeared "wide eyed" when they initially drove by the officers, which the Government now alleges was suspicious behavior.

Officer Angsten also testified that the procedure for dealing with a suspected armed person is to conduct a pat down immediately.  However, even after he allegedly saw Defendant reach toward his waistband and instructed Defendant to put his hands on the dashboard, the evidence indicates that the officers waited several minutes before attempting to conduct a pat down of Defendant and continued to arrest the driver while Defendant was unrestrained. Furthermore, after officer Amarillo instructed Defendant to keep his hands on the dashboard, he observed the Defendant and continued to observe the arrest of the driver simultaneously from the driver's side of the vehicle, turning away from the Defendant who was in the front passenger seat several times.  Taken as a whole, these circumstances do not indicate the officers had a reasonable suspicion that Defendant was armed and dangerous to warrant a pat down.

## CONCLUSION

The Government has not established any particularized facts to indicate the officers had a reasonable suspicion that Defendant was armed and dangerous to warrant a pat down. Accordingly, for the reasons stated on the record and herein, Defendant's Motion to Suppress is **GRANTED**.  All evidence discovered as a result of the unconstitutional search of Defendant's person is suppressed.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
June  *8*  , 2016
*Nunc Pro Tunc*
May  *31*  , 2016

Raymond A. Jackson
United States District Judge